UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. __1:21-mj-02689-AOR__

UNITED STATES OF AMERICA

v.

JORDAN JESUS HUNG MENDOZA and
JOSE GREGORIO MOURE ALVAREZ,

**Defendants.**

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?  __ Yes  _X_ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? __ Yes  _X_ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)?  __ Yes  _X_ No

4. Did this matter originate from a matter pending in the Southern Region of the United States Attorney's Office prior to November 23, 2020 (Judge Aileen M. Cannon)? _X_ Yes  __No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

BY: _/s/ Daniel J. Marcet_
DANIEL J. MARCET
Assistant United States Attorney
Southern District of Florida
FLORIDA BAR O. 0114104
99 Northeast 4th Street
Miami, Florida 33132-2111
Telephone: (786) 360-9778
E-mail: Daniel.marcet@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>JORDAN HUNG MENDOZA and<br>JOSE GREGORIO MOURE ALVAREZ,<br><br>*Defendant(s)* | Case No. 1:21-mj-02689-AOR |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 5 and 6, 2021__ in the county of __Miami-Dade__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 371 & 554(a) | Conspiracy to Smuggle Firearms from the United States |
| 18 U.S.C. §§ 371 & 922(g)(5)(B) | Conspiracy to Possess Firearms as Individuals who are admitted to the United Stats under a nonimmigrant visa |
| 18 U.S.C. § 554(a) | Attempted smuggling of firearms from the United States |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Elvis Corrales, HSI Special Agent
*Printed name and title*

Sworn to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by FaceTime.

Date: 4/8/21

_____
*Judge's signature*

City and state: Miami, Florida

Alicia M. Otazo-Reyes, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Elvis Corrales, Special Agent of Homeland Security Investigations ("HSI"), being first duly sworn, hereby states as follows:

## INTRODUCTION

1. I have been a Special Agent with HSI in Miami, Florida for over fifteen (15) years, during which time I have been involved in numerous investigations involving weapons trafficking, narcotics trafficking and money laundering. Prior to this assignment, I was a Customs Inspector with United States Customs and Border Protection assigned to the Miami Office of Field Operations for approximately seven (7) years, during which time I was involved in cases involving the interdiction of narcotics, merchandise, weapons, terrorist weaponry and proceeds thereof. I have received numerous hours of specialized training in U.S. Customs, Immigration laws and investigative methods. I have also participated in numerous United States Code, Title 8, 18, 19, 21, 31, and 50 investigations. As a result of my training and experience, I have knowledge of the means and methods used by Transnational Criminal Organizations ("TCOs") to include methods of communication, acquisition, transportation, distribution, concealment of arms and proceeds related to the illicit trafficking of arms.

2. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Titles 8, 18, 19, 21, 31, and 50 of the United States Code.

3. I know, through training and experience, that: (a) it is common for TCOs to utilize numerous concealment methods to unlawfully export arms from the United States within merchandise that are consolidated amongst other various shipments; (b) it is common for TCOs to

conceal arms within freight and utilize shipment consolidators, freight forwards, and commercial carriers (land, sea and air); (c) it is common for TCOs to conceal and comingle arms within other shipments to avoid customs and carrier shipment inspections in order to export them in violation of Title 18, United States Code, Section 554.

4. My knowledge of the facts alleged in this affidavit arises from my personal knowledge and observations, my training and experience, and information obtained from other law enforcement officers. This affidavit is does not include every fact known to me concerning this ongoing investigation. I have included only those facts and circumstances that I believe are sufficient to establish probable cause that Jordan Jesus HUNG MENDOZA and Jose Gregorio MOURE ALVAREZ knowingly conspired to smuggle firearms from the United States to Venezuela, and attempted to do so, in violation of Title 18, United States Code, Sections 371 and 554; and knowingly conspired to possess firearms as individuals present under a nonimmigrant visa, in violation of Title 18, United States Code, Sections 371 and 922(g)(5).

## **PROBABLE CAUSE**

5. On or about April 5, 2021, MENDOZA and ALVAREZ were admitted into the United States on B1/B2 non-immigrant visitor visas for pleasure. MENDOZA and ALVAREZ are both Venezuelan nationals.

6. On or about April 6, 2021, pursuant to an ongoing HSI investigation, an HSI Undercover Agent ("UCA") met with MENDOZA in Miami, Florida. The UCA was going to provide HUNG MENDOZA with approximately 26 fully automatic AK-47 firearms and a pistol, which HUNG MENDOZA intended to ship to Venezuela. During the meeting, which took place in a parking lot in Miami, Florida and was audio and video recorded, the UCA showed the firearms to MENDOZA. MENDOZA explained to the UCA that he was going to pack the firearms for

shipment to Venezuela. The UCA told MENDOZA to obliterate the serial number on the firearms to evade detection, which MENDOZA acknowledged.

7. At the conclusion of the meeting, MENDOZA took the firearms and placed them in the back of his vehicle. MENDOZA was then taken into custody.

8. After MENDOZA was taken into custody, he informed law enforcement that he was traveling with another individual, ALVAREZ. ALVAREZ was located in a nearby store and was detained. MENDOZA and ALVAREZ had traveled in the same vehicle. That vehicle was searched, and packing material for concealing the firearms for export to Venezuela was located.

9. Both MENDOZA and ALVAREZ were read their *Miranda* rights, which they waived and agreed to speak with law enforcement. The men were interviewed separately.

10. In his record post-*Miranda* interview, MENDOZA stated, among other things, that he and ALVAREZ were in the United States to pick up firearms for shipment to Venezuela. MENDOZA showed law enforcement messages on his cell phone confirming that he was in the United States to obtain firearms. MENDOZA planned to pack the AK-47s into a basketball hoop assembly kit, concealing the firearms inside of the metal poles. He then intended to drop the firearms off at a freight forwarder for shipment, but would not disclose the presence of the firearms to the freight forwarder because he knew that the freight forwarder would not ship firearms. MENDOZA acknowledged that he was aware that certain documentation was required for shipping firearms out of the United States, and that he did not have the paperwork. MENDOZA admitted that he had previously traveled to the United States with ALVAREZ for this same firearm smuggling scheme. MENDOZA anticipated being paid $1,000 per firearm that he and MENDOZA smuggled to Venezuela.

3

11. During his recorded post-*Miranda* interview, ALVAREZ stated, among other things, that he and MENDOZA had traveled to the United States from Venezuela for the purpose of obtaining firearms for shipment to the Venezuela. He stated that, in addition to the AK-47s obtained from the UCA, that he had arranged to obtain more firearms from another individual. ALVAREZ further acknowledged that he knew that his conduct was illegal, and that he and MENDOZA had previously traveled to the United States from Venezuela to smuggle firearms.

12. Travel records showed that ALVAREZ and MENDOZA had arrived together on or about April 5, 2021 on a non-immigrant B1/B2 visa. Travel records further showed that they traveled to the United States together on five separate occasions over the past five years.

## CONCLUSION

13. Based upon the foregoing, your Affiant submits there is probable cause to believe that HUNG MENDOZA and MOURE ALVAREZ did knowingly and willfully conspire and attempt to smuggle firearms from the United States to Venezuela, in violation of 18 U.S. Code §§ 371 and 554, and knowingly and willfully conspired to possess firearms as individuals present under a nonimmigrant visa, in violation of 18 U.S. Code §§ 371 and 922(g)(5).

_____
Elvis Corrales
Special Agent, Homeland Security Investigations

Attested to by the Affiant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Facetime this **8th** day of April 2021.

_____
HONORABLE ALICIA M. OTAZO-REYES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

4